801 F.2d 1283
 55 USLW 2248, 2 UCC Rep.Serv.2d 461
 BANTON INDUSTRIES, INC., Plaintiff-Appellant,
v.
DIMATIC DIE & TOOL COMPANY, a corporation; Dimatic Die &
Tool Company, a proprietorship; Dimatic Die & Tool Company,
a partnership; and Dimatic Die & Tool Company, an
unincorporated entity, Defendants-Appellees.
 No. 85-7537.
 United States Court of Appeals,
Eleventh Circuit.
 Oct. 15, 1986.
Rehearing and Rehearing En Banc Denied Nov. 20, 1986.
 
 Thomas R. Elliott, Jr., London, Yancey, Clark & Allen, Birmingham, Ala., for plaintiff-appellant.
 Karon O. Bowdre, Rives & Peterson, Edgar M. Elliott, III, Birmingham, Ala., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before TJOFLAT and ANDERSON, Circuit Judges, and MORGAN, Senior Circuit Judge.
 TJOFLAT, Circuit Judge:
 
 
 1
 This diversity case presents a narrow question of law: whether the due process clause prohibits the exercise of personal jurisdiction over a defendant whose sole contact with the forum state was an out-of-state sale of goods to a resident of the forum state. The United States District Court for the Northern District of Alabama concluded that the defendant lacked sufficient contacts with the forum state to permit the exercise of personal jurisdiction, and dismissed the plaintiff's claim without prejudice. We affirm.
 
 
 2
 The facts in this case are relatively simple. The plaintiff, Banton Industries, Inc. (Banton), is an Alabama corporation with its principal place of business in that state. Banton manufactures and distributes garden tillers that contain pulleys. The defendant, Dimatic Die & Tool Company (Dimatic), is not an Alabama corporation, and has its principal place of business in Omaha, Nebraska. Dimatic manufactures and sells pulleys. Dimatic has no agents in Alabama, solicits no business in Alabama, and owns no property in Alabama.
 
 
 3
 In early 1985, Banton placed an unsolicited order for the purchase of over 2,400 pulleys from Dimatic. Dimatic responded by shipping these pulleys in two separate shipments, F.O.B. Omaha, in January and March of 1985. The parties had conducted past transactions in the same way since 1981. Banton installed these pulleys in motorized garden tillers that it sold to its customers.
 
 
 4
 Banton, alleging that the pulleys were defective, brought suit against Dimatic in federal district court in Alabama. Dimatic moved to dismiss the case for lack of personal jurisdiction, and the district court granted the motion. Banton now appeals. Because Alabama's long arm jurisdiction statute extends as far as is constitutionally permissible, see Alabama Power Co. v. VSL Corp., 448 So.2d 327, 328 (Ala.1984), our task is to determine whether the exercise of personal jurisdiction over Dimatic meets the requirements of due process.
 
 
 5
 A court's exercise of jurisdiction over a non-resident defendant requires that the defendant have at least "minimum contacts" with the forum state. International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). This test, although not quantifiable, demands that "[t]he relationship between the defendant and the forum must be such that it is 'reasonable ... to require the corporation to defend the particular suit which is brought there.' " World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980) (quoting International Shoe Co. v. Washington, 326 U.S. at 317, 66 S.Ct. at 158). Among the factors relevant to determining if a forum can assert personal jurisdiction over a non-resident defendant is whether that "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. at 297, 100 S.Ct. at 567.
 
 
 6
 Even assuming that Dimatic breached an express or implied warranty by furnishing Banton defective pulleys, we agree with the district court that Dimatic's activities in this case do not provide the "minimum contacts" with Alabama that due process requires. Dimatic is not an Alabama corporation and has no contacts with that state other than its sale of goods to an Alabama resident. Nor does Dimatic actively seek business in Alabama. In fact, the contract and sale upon which Banton bases its claim arose out of Banton's unsolicited order of goods from Dimatic. Furthermore, Dimatic tendered the goods to Banton in Omaha, Nebraska. At no time did any representative of Dimatic enter Alabama.
 
 
 7
 In sum, although we recognize that Dimatic has had business dealings with an Alabama resident, we conclude that its actions were too insignificant to subject it to suit in Alabama. See Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A., 792 F.2d 989, 992-94 (11th Cir.1986) (business dealings and contract between resident plaintiff and non-resident defendant not necessarily sufficient to create in personam jurisdiction). The district court's order granting a dismissal without prejudice is accordingly
 
 
 8
 AFFIRMED.
 
 ANDERSON, Circuit Judge, dissenting:
 
 9
 I respectfully dissent from the decision of the majority that Dimatic did not have sufficient minimum contacts with the state of Alabama to support the exercise of personal jurisdiction by the district court.
 
 
 10
 In considering whether the exercise of jurisdiction over Dimatic would comport with constitutional requirements, the "operative consideration is that the defendant's contacts with the forum were deliberate, rather than fortuitous, so that the possible need to invoke the benefits and protections of the forum's laws was reasonably foreseeable, if not foreseen, rather than a surprise." Product Promotions, Inc. v. Cousteau, 495 F.2d 483, 496 (5th Cir.1975) (footnote omitted).[1]
 
 
 11
 In making this assessment, it is relevant to consider the previous course of dealings, if any, between the plaintiff and defendant. See, e.g., Southwire Co. v. Trans-World Metals & Co., Ltd., 735 F.2d 440 (11th Cir.1984); Standard Fittings Co. v. Sapag, S.A., 625 F.2d 630, 642 n. 23 (5th Cir.1980); Southwest Offset, Inc. v. Hudco Publishing Co., 622 F.2d 149 (5th Cir.1980). In the instant case, Dimatic had supplied pulleys to Banton in substantial numbers in earlier years. Thus, the fact that the contract which is the subject of the lawsuit was the last of a series of transactions indicates that Dimatic could reasonably have anticipated "being haled into court" in Alabama. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).
 
 
 12
 Moreover, the Supreme Court has stated that a "forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." World-Wide Volkswagen, 444 U.S. at 297-98, 100 S.Ct. at 567. A seller of goods need not actually have sold products to someone in the forum state, but need only have a reasonable expectation that the product will enter the forum state. See Oswalt v. Scripto, Inc., 616 F.2d 191, 198-202 (5th Cir.1980). Where a seller of goods has "absolute knowledge" that its products will be purchased by a consumer in the forum state, the predecessor to this court has held that the exercise of personal jurisdiction over the nonresident seller comports with due process. Austin v. North American Forest, 656 F.2d 1076, 1089-91 (5th Cir. Unit A Sept. 21, 1981).
 
 
 13
 The Austin case involved a single contract for the sale of doors. The defendant manufacturer of the doors argued that a court sitting in Louisiana could not assert personal jurisdiction over it because it had no agent, employee, or representative in Louisiana; it had no office, warehouse or other place of business in Louisiana; it had not contracted directly with the purchaser; it had not entered into a contract with any other party for the delivery of the doors to Louisiana; and the doors had not been shipped to Louisiana. Indeed, the facts indicated that the doors had been ordered by a third party by telephone from Oregon; that the manufacturer had its office in Michigan; that the doors were shipped to Alabama; that the manufacturer never sent a representative to Louisiana; and that the manufacturer had never conducted business in Louisiana. Nevertheless, the court found that the manufacturer "unquestionably knew that the doors it manufactured were to be used in ... Louisiana" because it had sent "a written representation certifying the quality of the doors" to the plaintiff. Id. at 1090-91. The court found that the manufacturer "did not just engage generally in delivering these doors into the stream of commerce; rather, it sold the doors specifically for use in [Louisiana]." Id. at 1091.
 
 
 14
 In the instant case, the seller knew that the consumer was an Alabama resident. Banton's purchase orders and checks and Dimatic's invoices all show an Alabama address for Banton. Record on Appeal, Tab 3; First Supp. Record on Appeal. While the purchase orders indicate that the goods were shipped F.O.B. Dimatic's plant and that Banton had discretion to choose a shipper, the purchase orders also show that in four out of five orders Banton told Dimatic to ship the pulleys the "Best Way" and did not select a shipper. First Supp. Record on Appeal. Consistent with this, the president of Dimatic stated in his affidavit: "[i]t was Dimatic's responsibility to contact and secure an independent commercial trucker to ship the pulleys to Alabama." Record on Appeal, Tab 3. Dimatic must have known Banton's location in order to ship the goods there. Thus, it is unquestionable that when Dimatic sold its doors it had "absolute knowledge" that they were being purchased by an Alabama consumer. See Austin v. North American Forest, 656 F.2d at 1091.
 
 
 15
 I conclude that this case is controlled by Austin, which involved only a single sale while this case involves not only the instant sale but also a prior course of dealings. Thus Dimatic's contacts with the State of Alabama in this case are more substantial than those found sufficient in Austin. I would hold that Dimatic could have reasonably foreseen that it would be haled into court in Alabama and that the requirements of the due process clause have been satisfied.[2] Therefore, I would reverse the judgment of the district court.
 
 
 
 [1]
 In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. Id. at 1209
 
 
 [2]
 The majority cites Sea Lift, Inc. v. Refinadora Costarricense De Petroleo, S.A., 792 F.2d 989 (11th Cir.1986), for the proposition that business dealings and a contract between a resident plaintiff and a nonresident defendant are not necessarily enough to create in personam jurisdiction. While it is true that such contacts do not necessarily satisfy the requirements of due process, see, e.g., Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc., 786 F.2d 1055 (11th Cir.1986), in some cases they do, see, e.g., Southwest Offset, 622 F.2d 149; Standard Fittings, 625 F.2d 630. Sea Lift involved a nonresident who sought to have a resident provide services outside the forum state, whereas the instant case concerns the sale of allegedly defective goods by a nonresident to a resident consumer. While the case law does not support the constitutionality of exercising jurisdiction over a party with the type of contacts described in Sea Lift, it does support the exercise of in personam jurisdiction over Dimatic. See Austin v. North American Forest, 656 F.2d 1076