STATE OF MAINE
CUMBERLAND, ss.

STATE OF MAINE
Cumberland, ss. Clerk's Office
SUPERIOR COURT

AUG 9 2007

RECEIVED

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-06-705
KSB-CUM-8/9 2007

CAMELOT POWER LLC,

    Plaintiff,

v.

PROSPECT ENERGY CORP., et al.,

    Defendants.

ORDER

DONALD L. GARBRECHT
LAW LIBRARY

JAN 07 2008

Before the court is defendant Prospect Energy Corporation's motion to dismiss on two grounds: (1) because personal jurisdiction is allegedly lacking over Prospect in Maine and (2) because an agreement between Prospect and plaintiff Camelot Power LLC contains a forum selection clause which provides that any judicial proceeding brought by Camelot against Prospect shall only be brought in a New York court.

According to the complaint, Prospect is a financial services company that lends to and invests primarily in companies in the energy industry. Prospect is incorporated in Maryland and has its primary place of business in New York City. Worcester Energy Co. Inc. is a Maine corporation that operates an electric power generation facility and has its principal place of business in Deblois, Maine. In 2005, Prospect agreed to lend $10,000,000 to Worcester. Subsequently, in connection with an additional loan in January 2006, Prospect acquired 51 percent of Worcester's common stock. Worcester is a shareholder-controlled company. Therefore, Prospect's acquisition of a majority of Worcester common stock put Prospect in control of that company. According to Camelot, Prospect then installed its officers, directors, and employees as officers of Worcester.

Camelot is a Maine limited liability company with a principal place of business in Portland and is in the business of providing consulting services in the electric power generation and energy sales business. On October 17, 2003, Camelot's predecessor in interest agreed to provide consulting services to Worcester ("2003 Agreement"). Although Camelot provided the services agreed upon, Worcester failed to pay. On September 21, 2005, Camelot and Worcester entered into a Fee Agreement ("2005 Fee Agreement") under which Worcester agreed to pay Camelot for services rendered under the 2003 Agreement. Worcester's obligation to pay Camelot under the 2005 Fee Agreement was secured by a Mortgage and Security Agreement on Worcester's power generation facility. However, contemporaneously with the execution of the 2005 Fee Agreement, Camelot, Worcester and Prospect entered into a Subordination Agreement under which the debt owed by Worcester to Camelot was subordinated to the debt owed by Worcester to Prospect.

In January 2006, Worcester defaulted on its payment obligations under the 2005 Fee Agreement. Following this default, Camelot alleges that Prospect asked Camelot to provide additional consulting services to Prospect and Worcester. Camelot further alleges that it agreed to provide those services (the "2006 Services") after assurances by Prospect and Worcester that it would be paid for its services provided in 2006 and that, if the 2006 services were successful in aiding Worcester to increase its income, Worcester would resume the payments owed under the 2005 Fee Agreement.

From February 2006 through September 2006, Camelot alleges that it provided approximately 500 hours of services to Worcester. Despite this performance, Camelot alleges that it has not received any payments for its 2006 services and that Worcester remains in default on the 2005 Fee Agreement.

2

On December 14, 2006, Camelot filed a five count complaint in this action, Count I (Unjust Enrichment), Count II (Quantum Meruit), Count III (Promissory Estoppel), and Count IV (Breach of Contract) are all claims to recover for services allegedly provided in 2006. Count V (Declaratory Judgment), in contrast, seeks to invalidate the Subordination Agreement applicable to debt owed to Camelot under the 2005 Fee Agreement based on the principle of equitable estoppel.

1.    <u>Personal Jurisdiction</u>

Courts commonly rule on motions to dismiss for lack of personal jurisdiction prior to trial and without resort to an evidentiary hearing. *Dorf v. Complastik Corp.*, 1999 ME 133, ¶ 13, 735 A.2d 984, 988. A plaintiff opposing such a motion must base that opposition "on specific facts set forth in the record . . . " *Id.* "This means that [the] plaintiff must go beyond the pleadings and make affirmative proof." *Id.* (internal quotations omitted). "This showing may be made by affidavit or otherwise." *Id.* However, the plaintiff is only required to make a *prima facie* showing that the court has jurisdiction and the plaintiff's written allegations of jurisdictional facts are construed in its favor. *Id.*, ¶ 14, 735 A.2d at 989.

Maine's "long-arm" statute authorizes jurisdiction over non-residents with "certain significant minimal contacts with this State . . . to the fullest extent permitted by the due process clause of the United States Constitution, 14th Amendment." 14 M.R.S. § 704-A(1). The statute states:

> [a]ny person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated in this section, thereby submits . . . to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts.

14 M.R.S. § 704-A(2). Those acts include:

In the present case, both Worcester and Camelot are organized in Maine and have their principal places of business here. Further, the services carried out by Camelot for Worcester and Prospect were provided in Maine. Additionally, as both Camelot and Worcester are located in Maine, it is likely that many of the witnesses and discoverable materials relevant to this lawsuit will be in Maine. As a result, it is clear that Maine has a legitimate interest in this litigation.[1]

(b)     Reasonable Anticipation

On the issue of whether Prospect could have reasonably anticipated litigation in Maine, due process demands that "one must purposefully avail oneself of the privilege of conducting activities within the jurisdiction and benefit from the protection of its laws." *Commerce Bank & Trust Co. v. Dworman*, 2004 ME 142, ¶ 16, 861 A.2d 662, 667. Such purposeful availment constitutes sufficient "minimum contacts" for a defendant to "have 'reasonably anticipated' being haled into court in Maine." *Boit v. Gar-Tec Products*, 967 F.2d 671, 679 (1st Cir. 1992). An act that would have created sufficient minimum contacts for jurisdiction if done by a defendant is sufficient if done by a defendant's agent. *See Sohn v. Bernstein*, 279 A.2d 529, 538 (Me. 1971); 14 M.R.S. § 704-A(2). The reason for the purposeful availment requirement is to guard against a non-resident defendant being haled into a forum based on "random, isolated or fortuitous"

---

[1]  Prospect's major argument on this issue is that Maine has a decreased interest in this suit because all of Camelot's claims for relief are properly interpreted as subject to the Subordination Agreement which Prospect argues explicitly dictates that this suit be brought in a New York court and be governed by New York law. This, however, has no relevance to the present determination. The Law Court has instructed that whether Maine has a legitimate interest in litigation for personal jurisdiction purposes requires an inquiry into the connections to Maine of the parties and the evidence. *See Murphy*, 667 A.2d at 594. Whether the parties contracted to have lawsuits between them governed by the law of another jurisdiction or in the courts of another jurisdiction has no bearing on the analysis of whether Maine has a legitimate interest in litigation.

contacts with that jurisdiction. *Unicomp v. Harcros Pigments Inc.*, 994 F. Supp. 24, 28 (D. Me. 1998).

In reviewing Prospect's contacts with Maine as alleged by Camelot, it is clear that Prospect could reasonably have anticipated being sued in this jurisdiction. Specifically, Prospect did far more than simply loan money to Worcester, a Maine company. As consideration for the loan, Prospect now owns the majority of common stock in Worcester. As a shareholder run corporation, this majority ownership status puts Prospect in control of that company. In exercising this control, Camelot alleges, and Prospect does not deny, that it has installed a number of its directors and officers as officers of Worcester.

Further, contrary to Prospect's suggestion, this lawsuit arises directly out of its contacts with Maine. As alleged by Camelot, the 2006 Agreement occurred only because of Prospect's assurances that Camelot would be paid. This agreement was for services by a Maine company, for a Maine company, based on assurances given by the majority shareholder of the Maine company seeking services. It can hardly be argued that a lawsuit seeking enforcement of that agreement does not arise out of activities with a sufficient connection to Maine for the exercise of personal jurisdiction.

Further, under Count V Camelot seeks to have the Subordination Agreement relating to the 2005 Fee Agreement ruled of no force based on a theory of equitable estoppel. The activities allegedly supporting equitable estoppel all involve Prospect's actions regarding Camelot's relationship with Worcester. Again, these contacts are significant and directly related to Camelot's cause of action. Prospect's contacts with Maine are not simply "random, isolated, or fortuitous." *See Unicomp*, 994 F. Supp. at 28.

6

Therefore, the purposeful availment element required for the exercise of personal jurisdiction in this case is satisfied.[2]

    (c)    Traditional Notions of Fair Play and Substantial Justice

Under this prong of the due process test, the court considers all the facts of the case. *Harriman v. Demoulas Supermarkets Inc.*, 518 A.2d 1035, 1038 (Me. 1986). Specifically,

> the burden of the defendant is to be compared with factors such as 'the forum State's interest in adjudicating the dispute, . . . the plaintiff's interest in obtaining convenient and effective relief . . . the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.

*Mahon v. East Moline Metal Products*, 579 A.2d 255, 256 (Me. 1990), quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

Moreover, when a defendant purposefully directs activities at a forum resident, as Prospect did here through its alleged behavior in securing Camelot's consulting services for Worcester, the defendant must present a compelling case demonstrating the presence of considerations that would nevertheless render the exercise of jurisdiction unreasonable. *Caluri v. Rypkema*, 570 A.2d 830, 833 (Me. 1990).

In light of the above precedent, jurisdiction over Prospect would easily comply with traditional notions of fair play and substantial justice. The only relevant factors raised by Prospect on this element are that a New York court can better apply New York law and that it is a substantial burden on Prospect to defend a case in Maine. As to the first argument, while it is true that it would be easier for a New York court to

---

[2]   Again, Prospect's argument regarding the forum selection clause in the Subordination Agreement is irrelevant to the analysis of whether it had sufficient minimum contacts to have reasonably anticipated litigation in Maine. Indeed, it can be argued that the presence of the forum selection clause demonstrated an awareness that litigation in Maine was reasonably anticipated.

apply New York law than for a Maine court to do so, it is not uncommon for courts of one state to be called upon to apply the law of another state, or even of a foreign country. Further, although it may be somewhat of a burden for Prospect to defend a case in Maine, this burden is not likely significant given the extensive involvement it has with Worcester. In any event, the burden of defending this suit in Maine is likely no more than the burden that would be involved in forcing Camelot to proceed in New York State. Based on the above, personal jurisdiction over Prospect in this case is appropriate.

2.    Improper Forum

The remaining question is what effect should be given to the forum selection clause contained in the Subordination Agreement that was entered into contemporaneously with the 2005 Fee Agreement. That clause provides, in pertinent part:

> ANY JUDICIAL PROCEEDING BY THE SUBORDINATED CREDITOR OR THE COMPANY AGAINST OR [SIC] SENIOR LENDER INVOLVING, DIRECTLY OR INDIRECTLY, ANY MATTER OR CLAIM IN ANY WAY ARISING OUT OF, RELATED TO OR CONNECTED WITH THIS AGREEMENT OR ANY RELATED AGREEMENT, SHALL BE BROUGHT ONLY IN A COURT LOCATED IN THE [SIC] NEW YORK, NEW YORK . . .

Subordination Agreement ¶ 6.[3]

In this case the Subordination Agreement defines Camelot as the "Subordinated Creditor" and Prospect as the "Senior Lender." *See* Subordination Agreement, introductory paragraph. The forum selection clause therefore is applicable so long as

---

[3] Neither party argues that the typographical errors in this provision are relevant. The court concludes that the meaning is clear, that the words "or senior lender" in the second and third lines above should read "the senior lender" and that the words "in the New York, New York" in the last two lines should simply read "in New York, New York."

8

the claims asserted qualify as claims "arising out of, related to, or connected with" the Subordination Agreement.

The Subordination Agreement provides that, in order to induce Prospect to enter into the loan agreement and to make loans and advances thereunder, any distribution "with respect to the Subordinated Indebtedness is and shall be expressly junior and subordinated in right of payment to all amounts due and owing upon all Senior Indebtedness outstanding from time to time." ¶ 2.2.

The following terms are also defined in the Subordination Agreement:

- "Subordinated Indebtedness" is defined to mean "all Fees (as defined in the Fee Agreement) and other amounts payable or chargeable in connection with the Subordinated Agreements." ¶ 1.1.

- "Subordinated Agreements" are defined as "collectively, Fee Agreement and all promissory notes, agreements, documents and instruments now or at any time hereafter executed and/or delivered by [Worcester], its affiliates or any other person to, with, or in favor of [Camelot], as all of the foregoing now exist or may hereafter be amended, modified, supplemented, extended, renewed, restated, or replaced." ¶ 1.1.

- "Senior Indebtedness" is defined to include "all Obligations of any kind owed by [Worcester] to [Prospect] from time to time under or pursuant to any of the Senior Lending Agreements." ¶1.1.

As an initial matter, there is no question that Count V of Camelot's complaint, which seeks to estop Prospect from enforcing the Subordination Agreement, is a claim "arising out of, related to, or connected with" the Subordination Agreement and is therefore squarely covered by the forum selection clause. However, there is a dispute between the parties as to whether Counts I-IV of Camelot's complaint, which seek recovery for services provided in 2006, arise out of or are related to the Subordination Agreement.

9

As noted above, the definition of Subordinated Agreements encompasses all promissory notes, agreements, documents or instruments "now <u>or at any time hereafter executed and/or delivered</u>" by Worcester to, with or in favor of Camelot (emphasis added). Camelot is arguing that it had an agreement with Worcester (and Prospect) to perform services for Worcester in 2006, *see* Complaint ¶¶ 12-13, 34, but there is a question whether any such agreement was ever "executed and/or delivered."[4]

The court does not need to resolve this issue because it concludes that (1) the presence of Count V is sufficient to demonstrate that this is a "judicial proceeding . . . involving, directly or indirectly, a matter or claim . . . arising out of the Subordination Agreement" and (2) even if only Counts I - IV were involved, those claims are "related to or connected with" the Subordination Agreement. The latter is true for several reasons.

First, under Camelot's own pleadings the Subordination Agreement and the contemporaneous 2005 Fee Agreement are a necessary backdrop to its 2006 claims. *See* Complaint ¶ 9. Second, it is apparent from the exhibits and arguments raised on the instant motion that there is a dispute between Camelot and Prospect as to whether the Subordination Agreement applies to any obligations owed to Camelot arising out of the 2006 services allegedly performed by Camelot. Regardless of the outcome of this issue, this matter is related to the Subordination Agreement. Third, the Subordination Agreement also contains (in ¶ 4.7) a provision that "without the prior written consent of [Prospect], [Camelot] will not enter into any agreements or accept any payments from

---

[4] As far as the court can discern from the record, the alleged agreement relied upon by Camelot with respect to 2006 services was oral rather than written. The words "executed and/or delivered" appear to suggest a written contract. However, Prospect argues that an "executed" agreement is an agreement that has been completed or already performed. *See* Black's Law Dictionary (6th ed. 1990) at 567. Under this definition the alleged agreement has been "executed" because Camelot is alleging that it has fully performed the services in question.

10

[Worcester] . . . except for the Fee Agreement." This provision is implicated in any dispute between the parties as to whether Camelot entered into a subsequent agreement to provide services to Worcester and is entitled to compensation for those services. For all these reasons, Counts I – IV are matters or claims that are "related to or connected with" the Subordination Agreement. Accordingly, the forum selection clause applies.

Camelot argues that this case falls within an exception to the forum selection clause that addresses the possibility that Prospect might be found to be an indispensable party in a judicial proceeding brought against Camelot or Worcester. That clause does not apply here. This is an action brought by Camelot against Prospect, not an action in which Prospect has not been joined but has thereafter been found to be a Rule 19 party.

The entry shall be:

Defendant Prospect Energy Corporation's motion to dismiss for lack of personal jurisdiction is denied. Defendant Prospect Energy Corporation's motion to dismiss on the ground that plaintiff is bound by a forum selection clause requiring that suit against Prospect Energy Corporation be brought in the courts of New York is granted. This dismissal is without prejudice to plaintiff's ability to seek relief in the courts of New York.

The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

DATED:      August _7_, 2007

_____
Thomas D. Warren
Justice, Superior Court

11

)F COURTS
and County
Box 287
ine 04112-0287

PETER CULLEY ESQ
ONE MONUMENT SQUARE _ $\rho$ |
PORTLAND ME 04101

: COURTS
nd County
ox 287
e 04112-0287

GEORGE MARCUS ESQ _ DM
100 MIDDLE STREET EAST TOWER
PORTLAND ME 04101

