Verna A. COOLIDGE, Guardian and Conservator of Rudolph E. Kyllonen, Jr., et al., Plaintiff,

v.

JUDITH GAP LUMBER CO., Defendant.

Civ. A. No. 91–397–P–C.

United States District Court, D. Maine.

Dec. 3, 1992.

Jack H. Simmons, Jeffrey Rosenblatt, Berman & Simmons, P.A., Lewiston, ME, for Gladys Kyllonen, Rudolph E. Kyllonen, Jr., and Verna A. Coolidge.

Harrison L. Richardson, John B. Lucy, Richardson & Troubh, Portland, ME, for Treesource Inc.

John B. Lucy, Richardson & Troubh, Portland, ME, for Judith Gap Lumber Co.

MEMORANDUM OF DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND DENYING PLAINTIFF'S MOTION TO STRIKE SUCH AFFIRMATIVE DEFENSE

GENE CARTER, Chief Judge.

In this two-count tort action, Plaintiff seeks monetary damages for economic, physical, and emotional injuries suffered when lumber from a boxcar he was unloading toppled upon him. In addition, his wife, Gladys Kyllonen, seeks loss of consortium damages. Plaintiff alleges that Defendant negligently loaded the lumber, and such negligence caused his injuries. Defendant has filed a Motion to Dismiss for lack of personal jurisdiction (Docket No. 38). Plaintiffs objected and responded with a Motion to Strike Defendant's Affirmative Defense of Lack of Personal Jurisdiction, or, in the alternative, a Motion for Partial Summary Judgment on the issue of personal jurisdiction (Docket No. 40).

## FACTS

The undisputed facts in this case are as follows. Judith Gap Lumber Company ("Judith Gap"), an Oregon corporation, owned and operated a lumber mill in Judith Gap, Montana, between January 29, 1990 and February 1, 1991. Treesource Inc., another Oregon corporation, was the exclusive sales agent for the sawmills owned and operated by WTD Industries, which included Judith Gap.[1] Thus, Treesource

---

1. Treesource, Inc. and Judith Gap were wholly owned subsidiaries of WTD Industries, Inc., an Oregon corporation.

handled all of Judith Gap's sales, with the exception of local purchases.

In late July, 1990, Portbec Forest Products of Quebec, Canada called Treesource, Inc. to order a load of lumber. Portbec directed Treesource to ship the lumber to Maine Wood Treaters, Inc. in Mechanic Falls, Maine, so that the lumber could be treated before being shipped directly to Portbec's customers. Treesource contacted Judith Gap to fill the Portbec order and paid Judith Gap for the lumber.

Judith Gap chose the type of railcar for the shipment. The wood was loaded in Judith Gap, Montana, on August 2, 1990 by an employee of Judith Gap Lumber Company named William Decker. Judith Gap knew that the lumber was being shipped to Maine because of the Treesource order form mailed to them listing how much, where, when, and how to ship the lumber.

On August 24, 1990, Rudolph Kyllonen, an employee of Maine Wood Treaters and Maine resident, was assigned the task of unloading the boxcar of lumber sent by Treesource to Maine. In the process of unloading the wood, the wood bundles toppled onto Plaintiff, crushing him beneath the load of wood.

Treesource has done, and continues to do, business in Maine. Judith Gap, on the other hand, has never had an established presence in Maine. No Judith Gap officer, agent, or employee has ever been to Maine on corporate business and Judith Gap has never advertised in Maine or sent correspondence to anyone in Maine. The lumber at issue is the only material ever shipped from Judith Gap into the state of Maine. Defendant's Answers to Interrogatories Dated 5/29/92, # 7–14.

## ANALYSIS

### A. *Prima Facie Showing Required*

When faced with a motion to dismiss for lack of personal jurisdiction, Plaintiff has the burden of showing that jurisdiction exists. *Boit v. Gar-Tec Products, Inc.*, 967 F.2d 671, 674–675 (1st Cir.1992) (applying Maine law). Plaintiff's showing of jurisdiction must generally be based upon specific facts incorporated in the record, which should be construed in favor of the plaintiff; however, where the hearing is nontestimonial and the court proceeds only upon the pleadings and affidavits of the parties, as in the case at bar, plaintiff need only make a prima facie showing that jurisdiction exists and plaintiff's written allegations of jurisdictional facts should be construed in its favor. *Electronic Media Int'l. (EMI) v. Pioneer Communications of America Inc.*, 586 A.2d 1256, 1259 (Me. 1991). Once it has been shown that Maine has a legitimate interest in the controversy and that requisite minimum contacts exist, the burden of proof shifts to defendant to show that exercise of jurisdiction does not comport with traditional notions of fair play and substantial justice. *Frazier v. Bankamerica Int'l.*, 593 A.2d 661, 662 (Me. 1991).

### B. *Maine's Long–Arm Statute and Due Process*

A federal court sitting in diversity must apply the law of the forum state to determine whether it may exercise jurisdiction over the person of a non-resident defendant. *Gray v. O'Brien*, 777 F.2d 864, 866 (1st Cir.1985). However, constitutional concerns of due process limit the application of this state law.

Maine's long-arm statute has been interpreted to allow courts sitting in Maine to exercise jurisdiction over any party who transacts business in the state or who commits a tort, if either the tort itself or the consequences of the tort occur in the state. 14 M.R.S.A. § 704–A(2)(A) and (B); *Boit*, 967 F.2d at 679. By its express language, the Court must construe the statute to find personal jurisdiction to the fullest extent permitted by the due process clause of the United States Constitution. 14 M.R.S.A. § 704–A(1).; *Tyson v. Whitaker & Son, Inc.*, 407 A.2d 1, 3 (Me.1979), *reh'g denied*, 411 A.2d 389 (Me.1980).

Due process in the exercise of jurisdiction over an out-of-state defendant requires the satisfaction of a three-prong test:

1) does the forum state have a legitimate interest in the subject matter of the action;

2) should the defendant by his conduct reasonably have anticipated litigation in the forum state; and

3) would the exercise of jurisdiction comport with "traditional notions of fair play and justice"

*EMI*, 586 A.2d at 1258 (Me.1991) (quoting *Foreside Common Dev. Corp. v. Bleisch*, 463 A.2d 767, 769 (Me.1983)). This Court will examine these three prongs.

### 1. State's Interest

It is clear from the facts that Maine has a significant interest in this case. Plaintiff and his wife are residents of Maine, and the tort occurred in this state. Maine has a significant interest in the safety of its workers and its residents and in adjudicating disputes over accidents that occur here. *Mahon v. East Moline Metal Products*, 579 A.2d 255, 256 (Me.1990). Further, Plaintiff has a right to obtain convenient and effective relief. *World–Wide Volkswagen Corp v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). Finally, all accident witnesses, all damage witnesses and all medical witnesses are located in Maine.

### 2. Minimum Contacts

The standard for the second prong of this analysis is taken from the Supreme Court's analysis in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) explaining that the defendant must have purposefully established 'minimum contacts' with the forum such that he can reasonably anticipate being hauled into that forum's court. In *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958), the Supreme Court explained, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."

In its opposition to Defendants' Motion to Dismiss, Plaintiffs argue that Judith Gap should reasonably anticipate being hauled into court in Maine because they purposefully established specific and significant contact with Maine by knowingly accepting an order to ship lumber here, choosing and packing a boxcar, and making such delivery to Maine by rail. *Plaintiff's Objection to Defendants' Motion to Dismiss* (Docket No. 40) at 15. This Court agrees with Plaintiff's conclusion. Judith Gap knowingly shipped its lumber to Maine. By shipping lumber into Maine, Judith Gap could have anticipated invoking the benefits of Maine law. For example, if Judith Gap's lumber had been damaged while in Maine, Judith Gap could have invoked the benefits and protections of Maine's laws and its courts in vindication of any such controversy. Thus, Judith Gap "purposefully availed itself of the privilege of conducting activities" within Maine in such a way that minimum contacts with Maine were established and the Defendant should have reasonably anticipated being sued in a Maine court.

### 3. Fair Play and Substantial Justice

In determining whether the exercise of personal jurisdiction in Maine over the out-of-state defendant is consistent with constitutional requirements, the Court considers whether it is "reasonable" or basically "fair" to subject the defendant to suit in this forum under these circumstances. *East Moline Metal Products*, 579 A.2d at 256. The burden on the defendant is to be compared with factors such as "the forum State's interest in adjudicating the dispute, ... the plaintiff's interest in obtaining convenient and effective relief ..., the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* (quoting *World–Wide Volkswagen Corp.*, 444 U.S. at 292, 100 S.Ct. at 564).

This Court concludes that the court's exercise of personal jurisdiction over Judith Gap would not violate any due process requirements. The Law Court's opinion in

*East Moline Metal Products,* 579 A.2d at 255, is instructive. In that case, a wrongful death action was brought against the manufacturer and purchaser of a construction site hoist that killed someone. *Id.* The defendant sold the hoist to a Ohio corporation and delivered it to Connecticut. *Id.* at 256. The hoist was then leased to a company related to the purchaser and shipped to Portland, Maine for use at the site where the accident took place. The defendant never had any office, employees, telephone number or agent in Maine. *Id.*

The Law Court weighed the competing interests and decided that the defendants should be subject to personal jurisdiction in Maine for numerous reasons. The court examined the plaintiff's interest in receiving effective relief, Maine's legitimate interest in the litigation, the fact that Maine law would likely apply to the issues in the case, and that East Moline had not demonstrated any significant burden imposed by a Maine trial.[2] *Id.* at 255–256. Further, the defendant knew the hoist was being used in Maine. *Id.*

The Court's analysis in *Mahon* applies with similar results to the parties in the instant case. As previously noted, Plaintiff has an interest in receiving effective relief and Maine has an interest in the litigation. Additionally, Defendant has not demonstrated any significant burden imposed by a Maine trial. Further, Judith Gap knew the lumber was going to Maine. The Court is satisfied, after weighing all of the foregoing factors, that personal jurisdiction may properly be exercised over Defendant Judith Gap in this action.

### C. *Motion to Strike Affirmative Defense*

█ Plaintiffs objected to Defendant's Motion to Dismiss by filing a Motion to Strike the Affirmative Defense of Lack of Personal Jurisdiction, or, alternatively, a Motion for Partial Summary Judgment on the issue of personal jurisdiction.

█ Fed.R.Civ.P. 12(f), regarding motions to strike, reads:

> Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter.

The authority given the Court by 12(f) to strike an insufficient defense on its "own initiative at any time" has been interpreted to allow the court to consider untimely motions to strike and to grant them if doing so seems proper. Wright & Miller, *Federal Practice and Procedure:* Civil 2d § 1380 (1990).

█ Motions to strike defenses are disfavored. The court's discretion is narrowly circumscribed, allowing the court to strike only those defenses so legally insufficient that it is "beyond cavil that the defendants could not prevail on them." *U.S. v. Kramer,* 757 F.Supp. 397, 409–410 (D.N.J.1991). This Court is unwilling, in consideration of that standard, to grant Plaintiff's Motion to Strike regarding lack of personal jurisdiction.

Accordingly, it is *ORDERED* that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction be, and is hereby, *DENIED.* It is further *ORDERED* that Plaintiff's Motion to Strike the Defense of Lack of Personal Jurisdiction or, alternatively, for Partial Summary Judgment, be *DENIED.*

So *ORDERED.*

---

**2.** In that case, the defendant had advertised in trade journals that circulated in Maine, and a Massachusetts agent had recommended an East Moline product to a Maine client. However, the Court did not emphasize these facts in its analysis and they do not appear, from the opinion, to be any part of the factual predicate for the Court's legal conclusion.