**Douglas SNELL, Plaintiff,**

v.

**BOB FISHER ENTERPRISES, INC. and Bob Fisher d/b/a Bob Fisher Enterprises, Defendants.**

**No. Civ. 99–150–P–C.**

United States District Court, D. Maine.

Sept. 22, 2000.

terprises, Inc. and Bob Fisher d/b/a Bob Fisher Enterprises, Inc. ("Bob Fisher").

In his Motion for Summary Judgment, Defendant Bob Fisher contends that he lacks sufficient contacts with the State of Maine to allow the Court to exercise personal jurisdiction over him. For the reasons discussed below, the Court agrees, and therefore grants Defendant Bob Fisher's Motion for Summary Judgment for lack of personal jurisdiction.

## I. FACTS

The Amended Complaint (Docket No. 43) alleges the following facts. Plaintiff, a resident of Maine, leased a street sweeper on or about May 11, 1997. *See* Amended Complaint ¶¶ 1, 7. While using the street sweeper that day, Plaintiff was injured. *See* Amended Complaint ¶ 13.

The record also sets forth the following undisputed facts. Defendant Bob Fisher, a resident of North Carolina, was involved in the design, manufacturing, and marketing of this street sweeper. *See* Defendant's Statement of Material Facts ("DSMF") (Docket No. 52) ¶ 2; Plaintiff's Statement of Material Facts ("PSMF") (Docket No. 56) ¶ 1; Defendant's Reply Statement of Material Facts ("RSMF") (Docket No. 58) ¶ 1. Plaintiff leased the street sweeper at issue in this case from Rent–It, Inc., a Maine corporation that purchased the sweeper in 1989. *See* DSMF ¶ 4.[1] The dealings between Rent–It, Inc. and Bob Fisher pertaining to the sale of the sweeper to Rent–It, Inc. took place in North Carolina and in either Texas or Georgia. *See* DSMF ¶¶ 8–12. These dealings began in 1989, when Rent–It, Inc. placed an order to purchase the sweeper at an equipment trade show held in either Texas or Georgia. *See* DSMF ¶ 8–9. The subsequent dealings between the parties took place in Bob Fisher's facility in North

Christopher C. Dinan, Noah D. Wuesthoff, Monaghan, Leahy, Hochadel & Libby, Portland, ME, William D. Robitzek, Berman & Simmons, P.A., Lewiston, ME, for Douglas Snell, plaintiff.

Martin I. Eisenstein, Daniel Nuzzi, Brann & Isaacson, Lewiston, ME, for Bob Fisher, Enterprises Inc., defendant.

James C. Hunt, Robinson, Kriger, McCallum & Greene, P.A., Portland, ME, for Lay–Mor, defendant.

Martin I. Eisenstein, Daniel Nuzzi, Brann & Isaacson, Lewiston, ME, Harrison l. Richardson, Paul R. Johnson, Richardson, Whitman, Large & Badger, Portland, ME, for Bob Fisher dba bob Fisher Enterprises, defendant.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

Presently before the Court is a Motion to Dismiss or for Summary Judgment ("Motion for Summary Judgment") (Docket No. 51) by Defendant Bob Fisher d/b/a Bob Fisher Enterprises. The Court's July 3, 2000, Memorandum of Decision and Order ("July 3 Order") (Docket No. 54) details the initial procedural history of this products liability action, which arises out of injuries Plaintiff suffered while operating a street-sweeping device. Subsequent to the Court's July 3 Order granting Defendant BFE, Inc.'s Motion to Dismiss, or in the Alternative for Summary Judgment, the case against BFE, Inc. for lack of personal jurisdiction, two Defendants remain parties to this suit: Bob Fisher En-

1. Although Plaintiff has not specifically alleged that he leased the street-sweeping device from Rent–It, Inc. and the record does not set forth evidence of this transaction, the parties have argued this motion under the mutual assumption that Plaintiff leased the street-sweeping device from Rent–It, Inc. The Court infers that there is no dispute over this fact and that Plaintiff had lawful possession of the device at the time of his injury.

Carolina, where an employee of Rent–It, Inc. took possession of and title to the sweeper. *See* DSMF ¶ 10. The payment for this sweeper was made either at the facility or at the trade show. *See* DSMF ¶ 11. Defendant had no involvement in transporting the sweeper to Maine. *See* DSMF ¶ 12. Nor has Defendant ever advertised his products in, delivered products to, or had any offices or manufacturing facilities in Maine. *See* DSMF ¶ 6.

## II. DISCUSSION

Deciding a motion to dismiss for lack of jurisdiction involves a "fact-sensitive inquiry." *Sawtelle v. Farrell,* 70 F.3d 1381, 1388 (1st Cir.1995). In a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is proper. *See Rodriguez v. Fullerton Tires Corp.,* 115 F.3d 81, 83 (1st Cir.1997) (citing *Sawtelle,* 70 F.3d at 1387; *Foster–Miller, Inc. v. Babcock & Wilcox Canada,* 46 F.3d 138, 145 (1st Cir.1995)). When the Court decides the motion on the basis of written submissions, including pleadings, affidavits, and exhibits, the plaintiff must make a *prima facie* showing of personal jurisdiction by citing to specific evidence in the record that, "if credited, is enough to support findings of all facts essential to personal jurisdiction." *Boit v. Gar–Tec Products,* 967 F.2d 671, 675 (1st Cir.1992). However, when the hearing is nontestimonial and the Court bases its determination of a plaintiff's *prima facie* showing only upon the pleadings, affidavits, and exhibits of the parties, the Court will construe the allegations in the record in the plaintiff's favor. *See Coolidge v. Judith Gap Lumber Co.,* 808 F.Supp. 889, 891 (D.Me.1992) (citing *Electronic Media Int'l v. Pioneer Communications of America, Inc.,* 586 A.2d 1256, 1259 (Me.1991)). Once the Court determines that the plaintiff has made a *prima facie* showing of Maine's legitimate interest in the controversy and the requisite minimum contacts, the burden shifts to the defendant, who, in order to defeat the plaintiff's claim of jurisdiction, must show that the Court's exercise of jurisdiction would not comport with "traditional notions of fair play and substantial justice." *See Coolidge,* 808 F.Supp. at 891 (citing *Frazier v. BankAmerica Int'l,* 593 A.2d 661, 662 (Me.1991)).

A two-part analysis guides the Court's determination as to whether to exercise personal jurisdiction over a nonresident defendant. *See Scott v. Jones,* 984 F.Supp. 37, 42 (D.Me.1997). The Court first considers whether the forum state's long-arm statute authorizes the exercise of personal jurisdiction. *See id.* Second, the Court determines whether the exercise of personal jurisdiction complies with the Due Process Clause of the United States Constitution. *See id.* (citing *Archibald v. Archibald,* 826 F.Supp. 26, 28 (D.Me.1993)). Because Maine's long-arm statute, 14 M.R.S.A. § 704–A, is "coextensive" with the Due Process Clause of the Fourteenth Amendment, *Murphy v. Keenan,* 667 A.2d 591, 593 (Me.1995), the framework of federal due process drives the Court's jurisdictional analysis. *See Sawtelle,* 70 F.3d at 1388 (1st Cir.1995).

Constitutional due process requires that a forum state's exercise of personal jurisdiction over a nonresident defendant is predicated upon "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). Whether the forum is exercising general or specific jurisdiction determines the standard that the Court must apply in its evaluation of the contacts between the defendant and a forum state. *See Archibald,* 826 F.Supp. at 28–29.

A court exercising general jurisdiction over a nonresident defendant may hear any cause of action against that defendant, regardless of its relationship to the defendant's contacts with the state. *See id.* at 29. In order for a court's exercise of general jurisdiction to satisfy constitutional due process, the defendant must

have " 'substantial' or 'continuous and systematic' contacts." *See id.* (citing *International Shoe,* 326 U.S. at 317, 66 S.Ct. at 159). The alleged contacts in this case do not satisfy this standard. Defendant Bob Fisher's contacts with the State of Maine consist of his out-of-state dealings with a single Maine rental company. This contact does not amount to the continuous and systematic contacts required for general jurisdiction. *See Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 416–17, 104 S.Ct. 1868, 1873–74, 80 L.Ed.2d 404 (1984) (holding that defendant's sending of its chief officer to forum state for contract negotiation session, acceptance of checks draw on bank located in forum state, purchase of equipment from company located in forum state, and sending of its employees to forum state for training session related to equipment purchase did not constitute constitutionally sufficient contacts for the exercise of general jurisdiction).

█ In his Objection to Defendant's Motion to Dismiss or for Summary Judgment, Plaintiff raises the possibility that Defendant might have employed sales people in Maine at some point in time. Specifically, Plaintiff cites to Defendant's deposition testimony that Bob Fisher Enterprises, Inc. employed a national marketing system of forty-two people and that Defendant does not recall "who or if there was [an employee] in Maine" to support his assertion that Bob Fisher may have employed one or more sales representatives in Maine. *See* PSMF ¶ 4; Fisher Deposition at 28. Defendant points out that this testimony relates to Bob Fisher Enterprises, Inc. rather than unincorporated Bob Fisher Enterprises, and he contends that this statement fails to provide affirmative evidence that Defendant employed sales representatives in Maine. *See* DSMF ¶ 4.[2] Defendant has also filed an affidavit stating that Bob Fisher Enterprises "had no agents or employees who were engaged to call upon any accounts in the State of Maine" prior to or on March 17, 1989. *See* Affidavit of Bob Fisher (Docket No. 53) at 3. While the record does leave open the possibility that Bob Fisher Enterprises employed sales agents in Maine between March 17, 1989, and the date of its incorporation, June 30, 1989, this disputed fact is not material to the issue of general jurisdiction. The First Circuit has made clear that the exercise of general jurisdiction requires contacts more continuous and systematic than the three-month presence of a small number of sales representatives. *See Glater v. Eli Lilly & Co.,* 744 F.2d 213, 217 (1st Cir.1984) (holding that limited advertising of products in trade journals and employing eight sales representatives in the forum state did not provide minimum contacts sufficient for the exercise of general jurisdiction). *See also Noonan v. Winston Company,* 135 F.3d 85, (1st Cir.1998) (holding that "sufficient minimum contacts to authorize general jurisdiction ... did not exist" when defendant obtained $585,000 of orders from company in forum state as a result of employees' regularly solicitation of business from company via fax, phone, letters, and at least two visits to forum state over the course of a two-year period), *reh'g denied* (Mar. 9, 1998).

█ Plaintiff's jurisdictional argument appears to rest on a theory of specific jurisdiction. A court exercises specific jurisdiction over a nonresident defendant when "the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." *United Electrical Radio and Machine Workers of America v. 163 Pleasant Street Corporation,* 960 F.2d 1080, 1089 (1st Cir.1992). In order for the Court's exercise of specific jurisdiction over a nonresident defendant to comport with constitutional due process principles, two conditions must be met. *See Boit,* 967 F.2d at 679.[3] "First, 'the defendant must

---

**2.** The parties do not dispute that Bob Fisher Enterprises was incorporated under North Carolina Law on June 30, 1989, and subsequently became Bob Fisher Enterprises, Inc. *See* Fisher Deposition at 13.

**3.** *Compare United Electrical Radio and Ma-*

have purposefully established minimum contacts with the forum such that he can reasonably anticipate being haled into that forum's court.'" *Id.* (citing *U.S.S. Yachts, Inc. v. Ocean Yachts, Inc.*, 894 F.2d 9, 11 (1st Cir.1990)). Second, the exercise of jurisdiction must not offend the principles of " 'fair play and substantial justice,' " *id.* (citing *Burger King · Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985)), in light of the "Gestalt factors." *United Electrical Radio and Machine Workers of America,* ·960 F.2d at 1089.

■ At issue in this case is whether Defendant Bob Fisher's conduct in connection with the sale of the street sweeping device constitutes a purposeful establishment of minimum contacts with the state of Maine. Plaintiff does not allege that Defendant traveled to Maine in connection with this sale, and he concedes that an employee of Rent–It, Inc. accepted delivery of the street-sweeping device in North Carolina and arranged for its transport to Maine. Instead, Plaintiff contends that by "generally offering his sweepers for sale at a major trade show and ... knowingly [selling] one to a Maine company," Defendant purposefully directed his product to Maine.

■ The First Circuit has adopted Justice O'Connor's plurality opinion in *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), for determining whether a defendant has purposefully established minimum contacts. *See Boit,* 967 F.2d at 683; *Rodriguez v. Fullerton Tires Corp.,* 115 F.3d 81, 85 (1st Cir.1997). Under this test, the " 'mere awareness' that a product may end up in the forum state does not constitute 'purposeful availment,' " and is therefore insufficient as a matter of constitutional due process. *Boit,* 967 F.2d at 683 (quoting *Asahi,* 480 U.S. at 112, 107 S.Ct. at 1032). Plaintiff must put forth

some evidence of "[a]dditional conduct of the defendant ... indicat[ing] an intent or purpose to serve the market in the forum State." · *Asahi,* 480 U.S. at 112, 107 S.Ct. at 1032. Under this test, Defendant Bob Fisher's conduct in connection with the sale of the street-sweeping device does not amount to purposeful directment of the product towards the state of Maine. Although Plaintiff maintains that the record establishes Defendant's knowledge that the sweeper was destined for Maine and encourages the Court to draw a distinction between "mere awareness" that ·a product may end up in a state and "certainty" that a product will end up in a state, precedent does not support this distinction. The First Circuit has explained that "specific knowledge that the stream of commerce" will move a product into a state does not "constitute the purposeful availment which is necessary for a showing of minimum contacts." *Rodriguez,* 115 F.3d at 85. *See also Dalmau Rodriguez v. Hughes Aircraft Co.,* 781 F.2d 9, 15 ("Assuming that [Defendant] knew that the destination of the helicopters was Puerto Rico, we do not think that the sale ... can be the source of a stream of commerce.... The test is not knowledge of the ultimate destination of the product, but whether the manufacturer has purposefully engaged in forum activities so it can reasonably expect to be haled into court there.").

Although Plaintiff correctly points out that this Court found jurisdiction in the cases of *Unicomp v. Harcros Pigments, Inc.,* 994 F.Supp. 24 (D.Me.1998) and *Coolidge v. Judith Gap Lumber Co.,* 808 F.Supp.· 889 (D.Me.1992), the Court's decisions in each of those cases rested on specific allegations of conduct in addition to the mere knowledge or awareness that a product would end up in Maine. In *Unicomp,* the Court based its holding on the Magistrate Judge's finding that the defendant had entered into an agreement with a distribution company whose target area

---

*chine Workers of America,* 960 F.2d at 1089, (articulating a three-part test in which the first prong consists of an evaluation of the

connection between the claim and the defendant's activities within the forum state).

included Maine. *See Unicomp,* 994 F.Supp. at 26–27. In *Coolidge,* the Court explained that because the defendant "knowingly ship[ed]" its product to Maine, the defendant "could have anticipated invoking the benefits of Maine's law," and offered the example of a lawsuit related to the shipment of the products. *See Coolidge,* 808 F.Supp. at 893. Defendant in this case has had no such connection with the State of Maine, and could not have anticipated invoking such benefits.

### III. CONCLUSION

Because Plaintiff has neither alleged an act in addition to Defendant's mere awareness that his product would likely end up in Maine nor continuous and systematic contacts between the Defendant and the State of Maine, Plaintiff has failed to meet his burden of establishing jurisdiction over Defendant Bob Fisher. Therefore, the Motion for Summary Judgment of Defendant Bob Fisher will be granted by the Court.

Accordingly, the Court **ORDERS** that the Motion to Dismiss or for Summary Judgment of Defendant Bob Fisher be, and it is hereby, **GRANTED.** It is further **ORDERED** that Defendant Bob Fisher be, and he is **DISMISSED** from this action.

So *ORDERED.*