Daniel DONATELLI, Plaintiff

v.

**UNUMPROVIDENT CORPORATION,
et al. Defendants**

No. CIV.04–01–P–S.

United States District Court,
D. Maine.

June 3, 2004.

Sumner H. Lipman, Lipman, Katz & McKee, Tracie L. Adamson, Lipman, Katz & McKee, Augusta, ME, for Daniel Donatelli, Plaintiff.

Margaret C. Lepage, Pierce, Atwood, Portland, ME, for Unumprovident Corporation, Thomas A H White, Defendant.

### ORDER AFFIRMING THE RECOMMENDED DECISION OF THE MAGISTRATE JUDGE

SINGAL, Chief Judge.

The United States Magistrate Judge filed with the Court on April 27, 2004 her

Recommended Decision (Docket # 39). The Plaintiff filed his objection to the Recommended Decision on May 14, 2004 (Docket # 43) and Defendant White filed his response to that objection on June 2, 2004 (Docket # 49). I have reviewed and considered the Magistrate Judge's Recommended Decision, together with the entire record; I have made a *de novo* determination of all matters adjudicated by the Magistrate Judge's Recommended Decision; and I concur with the recommendations of the United States Magistrate Judge for the reasons set forth in her Recommended Decision, and determine that no further proceeding is necessary.

1. It is therefore *ORDERED* that the Recommended Decision of the Magistrate Judge is hereby *AFFIRMED*.

Defendant White's Motion to Dismiss on jurisdictional grounds(Docket # 5)is *GRANTED*.

Plaintiff's Motion for Leave to Conduct Discovery and for an Evidentiary Hearing (Docket # 19) is *DENIED*.

## RECOMMENDED DECISION ON DEFENDANT THOMAS WHITE'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND MOTION FOR DISCOVERY OR EVIDENTIARY HEARING

KRAVCHUK, United States Magistrate Judge.

Plaintiff Daniel Donatelli is pursuing a whistleblower protection action against Defendant UnumProvident Corporation based on allegations that he was forced to retire as a consequence of complaining to his supervisors of unlawful claims handling practices taking place within UnumProvident, including the alleged imposition of "quotas on claim denials and/or closures." (Complaint, Docket No. 17, ¶ 21.) Donatelli is also pursuing a defamation claim against UnumProvident and Thomas A.H. White for statements White allegedly made as UnumProvident's Vice President of Corporate Relations. Specifically, Donatelli complains, "On or about November 6, 2002, Thomas A.H. White ... made written ... and/or oral statements to ... Mr. David Gelber, Executive Producer, Ed Bradley Unit for the CBS News show *60 Minutes II*, indicating that [Donatelli] was not credible." (*Id.*, ¶ 34.) This Recommended Decision concerns White's motion to dismiss the defamation claim against him for want of personal jurisdiction. (Docket No. 18.) I recommend that the Court **GRANT** the motion and **DENY** Donatelli's related motion for leave to conduct jurisdictional discovery or for an evidentiary hearing.[1]

### Jurisdictional Facts

▮▮ When facing a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing that personal jurisdiction is proper. *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir.2001). When an evidentiary hearing is not held to determine whether personal jurisdiction exists, the plaintiff must make a prima facie showing of jurisdiction by "citing to specific evidence in the record that, 'if credited, is enough to support findings of all facts essential to personal jurisdiction.'" *Snell v. Bob Fisher Enter., Inc.*, 115 F.Supp.2d 17, 20 (D.Me.2000) (quoting *Boit v. Gar–Tec Prod.*, 967 F.2d 671, 675 (1st Cir. 1992)). When determining whether the plaintiff has made the requisite prima facie showing, the court considers the pleadings,

---

1. The defendants also moved to dismiss Counts III and IV of the First Amended Complaint. Donatelli recently stipulated to the dismissal of those counts. (Docket No. 29.)

affidavits, and exhibits filed by the parties. *Snell*, 115 F.Supp.2d at 20. For the purposes of such a review, plaintiff's properly supported proffers of evidence are accepted as true and evidentiary disputes are resolved in favor of the plaintiff. However, unsupported allegations in the pleadings need not be credited. *Id.*

The relevant record for the jurisdictional question consists of the First Amended Complaint (Docket No. 17), the Declaration of Thomas A.H. White (Docket No. 7), a copy of a letter White sent to CBS News (Docket No. 7, Ex. 1), the Affidavit of Tracie L. Adamson, Esq. (Docket No. 18, Ex. 2), two UnumProvident press releases (Docket No. 18, Exs. 3, 4), and the Second Declaration of Thomas A.H. White (Docket No. 21, Ex. 1). The complaint establishes that Donatelli's claim against White is a common law claim for defamation that is based on the content of the letter White sent to CBS News concerning that news outlet's preparation of an investigative report on UnumProvident's claims handling practices. The letter was sent by White to David Gelber, Executive Producer, Ed Bradley Unit, CBS News, from White's office in Chattanooga, Tennessee, to Mr. Gelber's office in New York, New York. According to Donatelli, White impugned his credibility in the body of the letter. (Docket No. 17, ¶ 34.) Although the letter has been "introduced" for purposes of this motion, Donatelli does not call special attention to any particular passage within it. Donatelli offers Attorney Adamson's affidavit and the two press releases to establish that UnumProvident designates White as a contact for inquiries concerning its news coverage. UnumProvident offers White's first declaration to introduce in evidence the letter to Mr. Gelber and to establish that White's contacts with Maine have been and continue to be limited to business trips taken on behalf of UnumProvident to attend meetings at its Portland, Maine offices. UnumProvident offers White's second declaration to establish that White has never traveled to Maine "for the purpose of investigating any claims made by [Donatelli] or to gather information about Donatelli," and that he never "discuss[ed] Donatelli or his claims during any ... trips to Maine." (Docket No. 21, Ex. 1, ¶ 2.) Absent from the record is any indication that any statement contained in White's letter to Mr. Gelber ever made it into a CBS News nationwide broadcast or any other publication in Maine. Thus, for purposes of this motion, White's publication of this statement appears to have been limited to Mr. Gelber and possibly others within the CBS News office in New York.

### Discussion

 To preside over a legal controversy, a court must have "the power to require the parties to obey its decrees," or what the law refers to as "personal jurisdiction." *Swiss Am. Bank*, 191 F.3d at 35. "The plaintiff bears the burden of proving the court's personal jurisdiction over the defendant." *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 50 (1st Cir.2002). In a diversity proceeding, this Court's jurisdiction over parties is coextensive with that of a Maine state court. *Id.* at 51. Pursuant to Maine's Long Arm Statute, Maine courts can exercise jurisdiction to the full extent authorized by the Due Process Clause. 14 M.R.S.A. § 704–A. When a non-resident defendant engages in "continuous and systematic activity" inside the forum state, a court may exercise jurisdiction over that defendant consistent with the Due Process Clause, even if the claims raised in the case do not arise out of such activity. *Daynard*, 290 F.3d at 51 (discussing so-called "general jurisdiction"). When a non-resident defendant does not engage in continuous and systematic activity inside

the forum state, then jurisdiction depends on whether the non-resident defendant's contacts with the forum (1) sufficiently relate to the plaintiff's claims and (2) reflect a "purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable."[2] *United Elec. Radio & Machine Workers v. 163 Pleasant St. Corp.*, 987 F.2d 39, 43 (1st Cir.1993) ("*163 Pleasant St. II*") (describing so-called "specific jurisdiction"). When a plaintiff succeeds in demonstrating relatedness and purposeful availment, the court's exercise of jurisdiction over the person of the defendant is proper unless the defendant can establish that certain "gestalt factors" make the exercise of jurisdiction unreasonable. *Id.* (citing *United Elec. Radio & Machine Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1087 (1st Cir.1992) ("*163 Pleasant St. I*") (listing the five factors)). Alternatively, if the plaintiff's showing on relatedness and purposeful availment is close but non-convincing, the gestalt factors may tip the scale to either side. *Nowak v. Tak How Inv.*, 94 F.3d 708, 717 (1st Cir.1996).

White argues that neither the general jurisdiction nor the specific jurisdiction standard can be met here because his periodic work-related visits to Portland do not rise to the level of continuous and systematic contacts with Maine and because his letter to CBS News was written in Tennessee and sent to New York, without any publication of its contents in Maine. (Docket No. 5 at 1.) In response, Donatelli argues that the facts support an exercise of specific jurisdiction because his defamation claim would not have arisen but for

White's activity in Maine and because the effects of the alleged defamation were felt in Maine. (Docket No. 18 at 7.) In my view, Donatelli's showing satisfies neither the relatedness test nor the purposeful availment test.

### 1. Relatedness

On the question of relatedness, when the underlying claim lies in tort, a court "must probe the causal nexus between the defendant's contacts and the plaintiff's cause of action." *Phillips Exeter Academy v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 289 (1st Cir.1999). "The relatedness inquiry for tort claims focuses on whether the defendant's in-forum conduct caused the injury or gave rise to the cause of action." *Swiss Am. Bank*, 274 F.3d at 622. In other words, "the action must directly arise out of the specific contacts between the defendant and the forum state." *Sawtelle v. Farrell*, 70 F.3d 1381, 1389 (1st Cir.1995). In Maine, a claim of defamation arises when there is an unprivileged publication of a false and defamatory statement to a third party. *Cole v. Chandler*, 2000 ME 104, ¶ 5, 752 A.2d 1189, 1193. In this case, Donatelli alleges that White and Unum defamed him when White's letter indicated to Mr. Gelber at CBS News that Donatelli was "not credible." (Docket No. 17, ¶ 34.) Assuming that this amounts to a defamatory statement, the question is what relation White and this allegedly defamatory act have to the State of Maine. Donatelli contends that the relatedness test is met in this case because (1) he, Donatelli, "never left the State of Maine"; (2) White's sources for gathering information about Donatelli were likely based in UnumProvident's Portland, Maine office; and (3) the

---

**2.** More precisely, the facts and circumstances of the case must make a defendant "reasonably anticipate being haled into court" in the forum. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

underlying controversy concerns business practices Donatelli observed while employed by UnumProvident at its Portland, Maine office. (Docket No. 18 at 8.) In my view, these kinds of "relationships" do not establish "relatedness" among Maine, White and Donatelli's defamation claim. In particular, even if the Court assumes that White obtained information concerning Donatelli through his Maine-based contacts at UnumProvident, the mere gathering of information is neither an element of the defamation cause of action nor otherwise tortious. A defamation claim depends on the *publication* of a false statement of fact. Gathering information simply is not actionable and the relevant conduct of publication occurred in New York, not Maine.[3]

■■■■ Based on this record, I have trouble getting past the relatedness test. In Donatelli's view, relatedness must be established because White's statements would not have been made but for his Maine-based dispute with Unum, which he describes as "giving birth to" White's statement. (Docket No. 18 at 7.) But to my mind, the underlying circumstances of Donatelli's whistleblower action describe only the "general relationship [among] the parties," not specific contacts that proximately caused a defamation in New York. *Sawtelle*, 70 F.3d at 1389. In this case, the only conduct on the part of White capable of proximately causing reputational injury to Donatelli was White's publication of an allegedly defamatory statement, and that conduct did not occur in Maine.[4]

Donatelli's reliance on my recommendation in *New Life Brokerage Services, Inc. v. Cal–Surance Associates, Inc.*, 222 F.Supp.2d 94, 103 (D.Me.2002), does not persuade me that jurisdiction exists in this case. In *New Life*, I recommended, and the Court ultimately agreed, that it had personal jurisdiction over a California brokerage in the context of the plaintiff's breach of contract, breach of fiduciary duty and professional negligence claims. That conclusion was based on the fact that the defendant broker had directed numerous communications to the plaintiff in Maine soliciting its business, including professional advice and assurances that allegedly ultimately proved to be misguided. *Id.* at 102–103. Importantly, these contacts went directly to the elements of the plaintiff's contract and tort claims, being instrumental in the formation of the parties' contractual relationship and being the proximate cause of the plaintiff's detrimental reliance. *Id.* at 103–104. Although both *New Life* and this action concern claims premised on allegedly actionable speech, the speech in *New Life* was directed toward Maine, whereas the speech in this case was directed toward New York.

Ultimately, Donatelli has not offered any evidence of an in-forum defamatory publication. Nor, incidentally, has he offered anything of evidentiary quality to explain the nature of his alleged Maine-based reputational injury or how White's letter to CBS News causally contributed to such an injury. The only material bearing on the latter issue is a conclusory allegation in Donatelli's complaint, which is not of evi-

---

3. Donatelli does not allege defamation within the workplace and there is no evidence that White published any defamatory remarks within the confines of UnumProvident. In any event, such work place communications would give rise to issues of privilege. *See Cole*, 2000 ME 104, ¶ 6, 752 A.2d at 1193–94.

4. Consider by comparison a tangible tort like assault or conversion. Had White assaulted Donatelli in New York or destroyed an article of Donatelli's property in New York, the fact that White's motivation related back to Donatelli's Maine-based conduct would not render White's tortious conduct Maine-based.

dentiary quality. (Docket No. 17, ¶ 39.)[5] In my view, this hole in Donatelli's evidentiary proffer is too significant to ignore and White's motion should be granted on the basis of a lack of relatedness.

### 2. Purposeful availment

■■■■■ The purposeful availment test concerns whether White's contacts with Maine reflect "voluntary action" on his part that should have placed him on notice that he "might one day be called to defend himself" in a Maine court. *Jet Wine & Spirits, Inc. v. Bacardi & Co.*, 298 F.3d 1, 11 (1st Cir.2002). Donatelli argues that White's periodic travel to Maine for business meetings, coupled with his position as a national spokesperson for UnumProvident on the very topic of former employee lawsuits, "should have reasonably [placed White on notice] that his actions, as part of an aggressive campaign against former employee lawsuits, would have an effect on Donatelli and that the brunt of that injury would be felt by Donatelli in Maine." (Docket No. 18 at 9–11 (internal quotation marks and citation omitted).) In my view, this argument relies too much on White's ability to cause injury to Donatelli without focusing on the particulars of White's actual, claim-related conduct or Donatelli's alleged injury. In the specific jurisdiction context, the question is not what White was capable of doing by virtue of his position and UnumProvident's presence in Maine, but whether White's decision to speak in the terms he did and to the people he did (Mr. Gelber and possibly others at CBS News in New York) was an in-forum activity causing in-forum injury. The evidence shows that it was not in-forum activity. The evidence is silent regarding in-forum injury.

*Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), does not help Donatelli. In *Calder*, the plaintiff sued certain individual Florida residents in a California court. As here, the plaintiff's claim was for defamation. The defendants, a reporter and an editor of the National Enquirer newspaper, allegedly libeled the plaintiff in an edition of the nationally distributed paper. *Id.* at 784, 104 S.Ct. 1482. The Supreme Court held that the courts of California had personal jurisdiction over the defendants, despite a lack of general contacts between them and the State of California, because the "article was drawn from California sources, and the brunt of the harm ... was suffered in California." *Id.* at 788–89, 104 S.Ct. 1482. The Supreme Court rejected the defendants' contention that they were not responsible for publication of the libelous news story in California because they were not in control of their employer's decision to market the paper there. According to the Court, this fact was not an obstacle to the exercise of jurisdiction because the defendant intentionally produced an article that they knew would injure the plaintiff and because the brunt of that injury would be felt "in the State in which she lives and works and in which the National Enquirer has its largest circulation." *Id.* at 789–90, 104 S.Ct.

**5.** The conclusory allegation reads as follows: "As a result of Defendants' defamatory and malicious conduct, Plaintiff suffered damage to his reputation and severely diminished his opportunity to further his career within the insurance industry as well as caused emotional distress." (Docket No. 17, ¶ 39.) I recognize that in defamation cases damages can be presumed when a statement is *per se* defamatory, *Saunders v. Van Pelt*, 497 A.2d 1121,

1126 (1985), but the presumption must be reasonable, *id.*, and the connection between the statement White made to CBS News and a Maine-based injury for Donatelli is a far cry from intuitive. After all, reputational injury is community-based and associational in nature. *Rippett v. Bemis*, 672 A.2d 82, 86 (1996). Donatelli does not offer evidence that White's letter to CBS News in New York caused injury to any Maine-based relationships.

1482. The Court phrased its holding thusly, "We hold that jurisdiction over [defendants] in California is proper because of their intentional conduct in Florida calculated to cause injury to respondent in California." *Id.* at 791, 104 S.Ct. 1482.

Donatelli contends that he is on par with the plaintiff in *Calder* because his underlying dispute with UnumProvident arises out of events taking place in Maine, White's resources for gathering information about the dispute were all based in Maine, White knew his statements would quickly travel into Maine, and Donatelli's injury has been felt exclusively in Maine. (Docket No. 18 at 8.) In reply, White argues that *Calder* does not control this case because White's conduct was directed toward New York rather than Maine and because there is no evidence that the statements made to CBS News were ever "published" to a third party in Maine. (Docket No. 21 at 1–2.)

The First Circuit Court of Appeals has held that the *Calder* "effects" doctrine concerns the purposeful availment standard because the outcome in *Calder* turned primarily on the Court's perception of the defendants' intentions or purposes. *Swiss Am. Bank,* 274 F.3d at 623–24; *see also Noonan v. Winston Co.,* 135 F.3d 85, 90 (1st Cir.1998) (bypassing the relatedness inquiry in the context of a defamation action and moving directly to a discussion of *Calder* in the context of its purposeful availment inquiry). The Court of Appeals has set forth a relatively restrictive interpretation of *Calder*'s seemingly expansive effects doctrine in *Noonan v. Winston Company,* where it held that the holding in *Calder* was based on the fact that the defendants "had aimed an act at the forum state, knew the act would likely have a devastating effect, and knew the injury would be felt in the forum state, where Jones lived and worked 'and in which the National Enquirer had its largest circulation.'" 135 F.3d at 90 (quoting *Calder,* 465 U.S. at 790, 104 S.Ct. 1482).[6] It is not at all apparent in this case that White aimed the statements in his letter at Maine or knew that they would have a devastating effect on Donatelli in Maine. In fact, the evidence points in the opposite direction.

Donatelli's argument that the Court should find purposeful availment because White presumably intended for his statements about Donatelli's employment at UnumProvident to be incorporated into a CBS News nationwide broadcast (Docket No. 18 at 10) is unconvincing. In my assessment, a reading of the letter does not reasonably support this inference and actually favors a contrary finding. The entire thrust of White's discussion of Donatelli in the letter is that CBS News should not broadcast a certain answer Donatelli gave to a leading question asked during a deposition in an unrelated case and that, if CBS News would read the

**6.** Among the defendants in *Noonan* were two foreign entities that produced an advertising campaign featuring the plaintiff's picture, intending distribution to be limited to consumers in France. *Id.* at 87–88. Without the defendants' knowledge, hundreds of copies of the advertisement made their way to Massachusetts, the plaintiff's home state, and were observed by various individuals. *Id.* at 88. The plaintiff's injury stemmed from the fact that his picture had been used to advertise cigarettes and he had for roughly two decades actively endeavored to educate people in the forum about the health risks of tobacco use. *Id.* at 87. Importantly, "[s]ome people, assuming that [the plaintiff] had consented to the use of his image, denounced him for supporting the cigarette industry." *Id.* at 88. Thus, in-forum publication, in-forum injury, and the causal relationship between the two were all set forth on the record. Despite these significant in-forum effects, the Circuit Court held that jurisdiction did not lie because the foreign defendants did not direct their conduct toward Massachusetts. *Id.* at 90–91.

entire transcript of Donatelli's deposition, it would find that Donatelli's testimony was not really probative of improper conduct on the part of UnumProvident. In other words, White's letter was written to prevent any publication of Donatelli's statements concerning UnumProvident. Such conduct, in my view, falls short of being "calculated to cause injury to [Donatelli] in [Maine]."[7] *Calder,* 465 U.S. at 791, 104 S.Ct. 1482. Moreover, even if it was foreseeable that CBS News might publish portions of the letter, that never came to pass and pure foreseeabilty is not the touchstone of the purposeful availment standard. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 296, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). This takes us to the issue of the alleged "effects."

Donatelli's jurisdictional showing does not falter only on the issue of White's intentions. On a more fundamental level, the record is devoid of any real evidence of an in-forum injury or effect, unlike both *Calder* and *Noonan.* This is due, in significant part, to the absence of an inforum publication, *see Swiss Am. Bank,* 274 F.3d at 624–25 ("[T]he in-forum publication of the article in *Calder* provided an important contact for jurisdictional purposes."), but also to the absence of evidence concerning any in-forum harm to Donatelli. There simply is no basis in the record for the Court to understand how it is that the allegedly defamatory statement that was sent from Tennessee to New York came home to roost in Maine. In other words, there is no evidence of any in-forum effects to support an application of the *Calder* effects doctrine.[8] Without any basis to understand the nature of the in-forum effect it is hard to place Donatelli's situation on par with the plaintiffs in *Calder* and *Noonan* or White's conduct on par with the defendants in *Calder.* Ultimately, my assessment is that Donatelli cannot succeed with a jurisdictional argument based on the *Calder* effects doctrine when the key evidence (the letter) was not published in Maine and does not reflect a calculated attempt to cause an injury to Donatelli in Maine (let alone a "devastating effect," *Noonan,* 135 F.3d at 90), and where Donatelli does not provide the Court with an evidentiary basis to understand the in-forum effect of the extra-forum publication.

### 3. Gestalt factors

 In the event that the Court agrees with the recommendation on the issues of relatedness and purposeful availment, there would be no need to address the five gestalt factors prescribed by the Court of Appeals. *163 Pleasant St. I,* 960 F.2d at 1090 n. 11. On the other hand, the

---

7. The *Calder* opinion does not make clear the evidentiary basis for the trial court's finding that the individual defendants therein had "calculated to cause injury … in California." The natural presumption, I suppose, is that a widely-circulated newspaper publication of a defamatory statement, particularly one appearing in the National Enquirer, could not be anything but calculated to cause injury. Here the facts are quite different. White sent a letter to CBS News objecting to aspects of a journalistic investigation and presenting an argument about why Donatelli should not be used as a source in any forthcoming news story. One cannot simply presume that this sort of out-of-forum communication was calculated to cause Donatelli injury in Maine. *See, e.g., Noonan,* 135 F.3d at 91 (discussing the inference of intentionality drawn in *Calder* based on the facts of the case and how the "size of a distribution of offending material" in the forum-state "helps determine whether a defendant acted intentionally").

8. As the Third Circuit Court of Appeals has held, "The mere allegation that the plaintiff feels the effect of the defendant's tortious conduct in the forum because the plaintiff is located there is insufficient to satisfy *Calder.*" *Imo Indus., Inc. v. Kiekert AG,* 155 F.3d 254, 263 (3d Cir.1998).

Court of Appeals has indicated that in close cases, the gestalt factors "may tip the constitutional balance." *Nowak,* 94 F.3d at 717. "'The weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction.' The reverse is equally true: a strong showing of reasonableness may serve to fortify a more marginal showing of relatedness and purposefulness." *Id.* (quoting *Ticketmaster–New York v. Alioto,* 26 F.3d 201, 210 (1st Cir.1994)). The gestalt factors call upon the Court to consider:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*163 Pleasant Street I,* 960 F.2d at 1088. Factors 3 and 4 obviously suggest that an exercise of jurisdiction by this court would not be inherently unreasonable, although it is hard to think of factor 3 ever weighing against litigation in the plaintiff's home forum. Of these several factors only factor 1 supports White. On the other hand, White's burden of appearing does not seem particularly excessive in light of the fact that UnumProvident appears to be paying defense counsel's bill and would probably cover White's travel expenses as well. Still, enduring litigation in a forum as distant as Maine is from Tennessee is an appreciable burden, particularly when one considers that White's presence in this litigation stems entirely from the fact that he engaged in the claim-dependent activi-

ties in New York, not Maine, and did so only in agency to his corporate principal, not to serve his private interest. Whether or not one labels these considerations a "fiduciary shield," the fact is that they are legitimate considerations when the reasonableness of an exercise of jurisdiction is at issue. *But see Maine Rubber Int'l v. Envtl. Management Group, Inc.,* 298 F.Supp.2d 133, 135–36 (D.Me.2004) (declining to apply the fiduciary shield doctrine in a case where, unlike this one, the defendant "clearly had the requisite minimum contacts" with the forum, albeit on the theory that the doctrine is equitable in nature and therefore should not be applied in the context of a constitutional analysis). The net total of these factors does not, in my view, provide Donatelli with a sufficient counterweight to overcome the significant problems that exist with respect to his showing on the issues of relatedness and purposeful availment.

*4. Jurisdictional discovery is not warranted.*

In a related motion, Donatelli requests that he be given leave to conduct jurisdictional discovery, including by means of an evidentiary hearing. (Pl.'s Mot. for Discovery and for Evidentiary Hearing, Docket No. 19.) According to Donatelli, "it is imperative that [he] be permitted to explore White's contacts in Maine, as well as their relation to [his] claims in order to fully assess whether general or specific jurisdiction exists." (*Id.* at 3.) Donatelli appears to think that White's contacts with Maine might have related to the letter he wrote to CBS News, insofar as White "utilized forum contacts in Maine to gather and develop the information underlying the tort[i]ous [9] letter sent to [CBS News]."

---

9. I presume that Donatelli's counsel utilizes the same word processing software as I do because their computer, like mine, automatically translates "tortious" into "tortuous" without asking leave to do so.

(*Id.*) Donatelli does not suggest any other line of inquiry that he would like to pursue.

■■■■ "Even if they do not alter the constitutional balance, the gestalt factors can be important in determining whether the plaintiff's jurisdictional showing is 'colorable' enough to support a request for jurisdictional discovery." *Swiss Am. Bank,* 274 F.3d at 635. The Court has broad discretion to permit or deny jurisdictional discovery. *Noonan,* 135 F.3d at 94. A denial of leave to conduct discovery "will be overturned 'only upon a clear showing of manifest injustice, that is, where the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party.'" *Crocker v. Hilton Int'l Barbados, Ltd.,* 976 F.2d 797, 801 (1st Cir.1992) (quoting *Santiago v. Fenton,* 891 F.2d 373, 379 (1st Cir.1989)). The docket reflects that Donatelli has been free to conduct any jurisdictional discovery that might be obtained from UnumProvident since January 5, 2004, the date that the Court's Scheduling Order issued.[10] (Docket No. 8.) My assessment is that discovery about the particulars of how White obtained information concerning Donatelli's employment at UnumProvident is not reasonably calculated to resolve any of the analytical problems that currently exist insofar as relatedness and purposeful availment are concerned. For example, discovery about how White obtained information about Donatelli is not likely to produce evidence tending to establish that White's letter to CBS News was calculated to cause injury to Donatelli in Maine. Nor is such discovery likely to produce evidence tending to explain how the statement made to CBS News in New York came to have an injurious effect upon Donatelli in Maine. Evidence of injury to Donatelli in Maine would most likely come from Donatelli himself, not discovery initiatives directed at White. As for general jurisdiction, White's periodic employment-related visits to this forum are already established on the record. The argument that such contacts with Maine rise to the level of continuous and systematic contacts was already available to Donatelli, but was not pressed.[11]

## Conclusion

For the reasons stated herein, I **RECOMMEND** that the Court **GRANT** White's motion to dismiss on jurisdictional grounds and **DENY** Donatelli's motion for leave to conduct discovery and for an evidentiary hearing.

## *NOTICE*

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is

---

10. I recognize that the motion to dismiss was filed January 2, 2004, before the Scheduling Order issued. However, Donatelli waited one month before requesting leave to conduct discovery requests. Although it was appropriate to request discovery on the jurisdictional issue to notify the Court that Donatelli desired to obtain and introduce additional evidence, nothing in the written Scheduling Order precluded Donatelli from commencing discovery initiatives in the interim as directed toward UnumProvident, the only likely source of any evidence about White's contacts in Maine, other than White's own affidavit/testimony

that is part of the record. Had Donatelli been proactive, any discovery initiatives could have been completed as of this date.

11. I by no means intend to criticize Donatelli for bypassing a general jurisdiction argument. Without belaboring the issue, suffice it to say that in these kinds of circumstances "the standard for evaluating ... general jurisdiction ... is considerably more stringent than that applied to specific jurisdiction." *Noonan,* 135 F.3d at 93.

sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.